Keith A. Jacoby, Bar No. 150233
kjacoby@littler.com
Jonathan Russell Blakey, Bar No. 333584
rblakey@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067.3107
Telephone:  310.553.0308
Facsimile:  800.715.1330

Attorneys for Defendant
CITIZENS TELECOM SERVICES
COMPANY L.L.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA CARDENAS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITIZENS TELECOM SERVICES COMPANY, L.L.C., a Delaware limited liability company; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  25-cv-7695<br><br>*[Removed from Los Angeles Superior Court Case No. 25STCV21021]*<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. SECTIONS 1332 AND 1441**<br><br>Trial Date:        None Set<br>Complaint Filed:  July 16, 2025 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Citizens Telecom Services Company, L.L.C. ("CTSC") removes to this Court the state court action from the Superior Court of the State of California in and for the County of Los Angeles. Removal jurisdiction is proper in this Court pursuant to 28 U.S.C sections 1332 and 1441(b) based on diversity of citizenship between the parties.

In support of its Notice of Removal of Civil Action, CTSC alleges the following:

1. On July 16, 2025, Plaintiff Alexandra Cardenas ("Plaintiff") filed her Complaint alleging five causes of action brought under California state law: (1) "Discrimination in Violation of the FEHA"; (2) "Retaliation in Violation of the FEHA"; (3) "Failure to Prevent in Violation of the FEHA"; (4) "Failure to Engage in the Interactive Process in Violation of the FEHA"; and (5) "Failure to Accommodate in Violation of the FEHA." Declaration of Jonathan Russell Blakey ("Blakey Decl.") ¶ 2, Ex. A.

2. In addition to the named CTSC, Plaintiff named fictitious defendants DOES 1-50. *Id.*

## I.   STATEMENT OF JURISDICTION

3. This Court has original jurisdiction over this civil action under 28 U.S.C. section 1332(a) and this action is one that may be removed to this Court pursuant to the provisions of 28 U.S.C. section 1441(b) because: (1) Plaintiff is a citizen of the State of California; and (2) CTSC is a Delaware limited liability company with its principal place of business in the State of Connecticut, and CTSC's sole member (and the sole member's parent corporation) is not a resident of the State of California. Additionally, the amount in controversy in this action exceeds $75,000.

## II.   VENUE

4. This action was filed in the Superior Court of the State of California, County of Los Angeles. Accordingly, venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 84(c), 1391, 1441 and 1446.

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

## III.   PROCEDURAL HISTORY

5.     On July 16, 2025, Plaintiff commenced this action by filing a Complaint for Damages in the Superior Court of the State of California, County of Los Angeles. Blakey Decl. ¶ 2, Ex. A. Plaintiff's Complaint alleges five causes of action: (1) "Discrimination in Violation of the FEHA"; (2) "Retaliation in Violation of the FEHA"; (3) "Failure to Prevent in Violation of the FEHA"; (4) "Failure to Engage in the Interactive Process in Violation of the FEHA"; and (5) "Failure to Accommodate in Violation of the FEHA." Blakey Decl., Ex. A.

6.     On July 18, 2025, Plaintiff served CTSC via Notice of Service of Process the Complaint, the Summons, the Civil Case Cover Sheet, the Notice of Case Assignment - Unlimited Civil Case, and the Alternate Dispute Resolution ("ADR") Information Package. *Id.* ¶ 3, Ex. B. Plaintiff filed her Proof of Service of Summons of CTSC the same day. *Id.* ¶ 4, Ex. C.

7.     On August 14, 2025, CTSC filed its Answer in the Superior Court of the State of California, Los Angeles County, to Plaintiff's Complaint. *Id.* ¶ 5, Ex. D.

## IV.   TIMELINESS OF REMOVAL

8.     This Notice of Removal is timely as it is being filed with this Court and served within thirty (30) days after the date when Defendants were deemed served with the Summons and Complaint. This Notice of Removal is also timely because it is based on diversity jurisdiction and filed within one year of the date the action was originally filed on July 16, 2025.

## V.   DIVERSITY JURISDICTION

9.     The diversity of citizenship statute, 28 U.S.C. section 1332(a), provides in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States . . . .

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

## A.    **Diversity of Citizenship**

10.    <u>Plaintiff is a citizen of California:</u> For diversity purposes, a person is a "citizen" of the State in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); s*ee Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"). Plaintiff alleges that she is "a resident of the county of Los Angeles, State of California." *See* Blakey Decl., Ex. A, ¶ 1. Plaintiff, therefore, is a citizen of the State of California.

11.    <u>CTSC is a citizen of Delaware and Connecticut:</u> For the purposes of determining citizenship of a limited liability company or partnership, the court should consider the citizenship of each member or owner of the company. *See, e.g., Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006) ("like a partnership, an LLC is a citizen of every state in which its owners/members are citizens.").

12.    CTSC is a Delaware limited liability company, and its principal place of business is located at 2 Washington Street, Norwalk, Connecticut. Declaration of Anne C. Meyer ("Meyer Decl.") ¶ 2. Citizens Newtel LLC ("Newtel") is the direct parent and sole member of CTSC. *Id.* Newtel is all Delaware limited liability company and is and an indirect wholly-owned subsidiary of Frontier Communications Parent, Inc. ("Frontier"), which is a citizen of Delaware and Texas. *Id.* ¶ 3. Frontier's principal asset is all of the capital stock of Frontier Communications Intermediate, LLC ("Intermediate"), which is a holding company that owns all of the capital stock of Frontier Communications Holdings, LLC ("Holdings"). *Id.* ¶ 4. Holdings owns all of the capital stock of Newtel. Intermediate and Holdings are Deleware limited liability companies and are not citizens of the State of

California. *Id.* ¶ 5.

13.    For purposes of determining citizenship of a corporation, a corporation is deemed a citizen of any state in which it has been incorporated and the state where it has its principal place of business. *Ibid. See* 28 U.S.C. § 1332(c)(1). As the Supreme Court has recently held, a corporation's principal place of business is where "the corporation's high-level officers direct, control, and coordinate the corporation's activities. Lower federal courts have often metaphorically called that place the corporation's 'nerve center.' . . . the 'nerve center' will typically be found at a corporation's headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (internal citations omitted). Here, Frontier at the time of the filing of this action, and still is, a corporation incorporated under the laws of the State of Delaware. Meyer Decl. ¶ 3. Further, Frontier's principal place of business is located at 1919 McKinney Avenue in Dallas, Texas. *Id.* Frontier's officers work and direct the operations of Frontier from the corporate headquarters located in Dallas, Texas. *Id.* Accordingly, CTSC is not a citizen of California.

14.    <u>Citizenship of the Doe Defendants should be disregarded</u>: Plaintiff's Complaint also names as defendants "DOES 1 - 50." Pursuant to 28 U.S.C. section 1441(a), the citizenship of defendants sued under fictitious names must be disregarded for the purpose of determining diversity jurisdiction. Further, to CTSC's knowledge, no fictitious defendant has been served; thus, none need join in the Notice of Removal.

15.    Therefore, there is complete diversity between the parties who have been properly joined and served for purposes of removal: Plaintiff and CTSC. *See* 28 U.S.C. §1441(b).

**B.    <u>Amount in Controversy</u>**

16.    This Court has jurisdiction because, in addition to the prerequisite of diversity between the parties, the amount placed in controversy by Plaintiff's alleged claims exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). A defendant's notice of removal must include only a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S.

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

81, 81 (2014). Supporting evidence is only required if the plaintiff contests or the court questions the allegations supporting the removal. *Id.* at 554. Otherwise "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 89.

17.    In measuring the amount in controversy, "a court must assume that the allegations of the complaint are true and that a jury [will] return [] a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by Plaintiff's Complaint, not what Defendants will actually owe if Plaintiff prevails. *See Rippee v. Boston Market Corp.*, 408 F.Supp. 982, 986 (S.D. Cal. 2005) ("It's not a question as to what you would owe. It's a question as to what is in controversy.").

18.    Further, as one district court recently held, "[u]nder this standard, 'the removing party's burden is 'not daunting,' and defendants are not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Cagle v. C & S Wholesale Grocers, Inc.*, 2014 WL 651923, at *7 (E.D. Cal. Feb. 19, 2014) (citations omitted).

19.    Plaintiff seeks in her Complaint: general damages, special damages, punitive damages, and attorney's fees. *See* Blakey Decl., Ex. A, Prayer. The total amount of damages Plaintiff seeks, and the total amount implicated by these forms of relief clearly exceed the sum of $75,000, exclusive of interests and costs.

### i.    Plaintiff Seeks Economic Damages in the Form of Lost Wages and Benefits

20.    Plaintiff is seeking alleged lost salary and benefits. *See* Blakey Decl., Ex. A, ¶¶ 20, 27, 36, 44, 53. Specifically, Plaintiff claims that she has "suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits … all in an amount subject to proof at the time of trial." *Id.*

21.    Plaintiff alleges that she worked for CTSC as a Customer Service Associate.

LITTLER MENDELSON, P. C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

Blakey Decl., Ex. A, ¶ 6. Plaintiff was an hourly employee. *See* Declaration of Amy Carman ("Carman Decl.") ¶ 3. At the end of Plaintiff's employment, in February 2025, Plaintiff earned $37.86 hourly / $1,514.40 per week. *Id*. Accordingly, if Plaintiff were to prevail on her claims, she could be entitled to lost earnings (*e.g.*, back pay) of approximately $33,316.80 from February 17, 2025 through the filing of her instant Complaint on July 16, 2025 (approximately 22 weeks) – with that amount growing as this case progresses.

22.    If Plaintiff prevails on these claims, she may recover the amount she would have earned up through the date of trial, including any benefits or pay increases. *See* Judicial Council of California, Civil Jury Instruction ("CACI") 3903P (2024); *Wise v. S. Pac. Co.*, 1 Cal.3d 600, 607 (1970). Assuming a case disposition timeline of 12 months from the date of removal, Plaintiff's past wage loss claim from her employment termination through a potential trial 12 months from removal would amount to **$78,748.80** ($1,514.40 x 52 weeks).

23.    In addition, Plaintiff's lost earnings allegations do not contain a limit in their temporal scope. Front pay awards in California frequently span a number of years. *See Smith v. Brown-Forman Distillers Corp.*, 196 Cal.App.3d 503, 518 (1989) (front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus., Inc.*, 55 Cal.App.3d 91, 97-98 (1976) (four years). The guiding principle is the time the Plaintiff was reasonably certain to have continued employment with Defendants. CACI 3903P. Front pay is a temporary and transitional remedy measured by the employee's protected earnings until she is likely to be reemployed. *Contract Damages*, Cal. Prac. Guide Employment Litigation Ch. 17-B. "The U.S. Supreme Court has cited with apparent approval lower court cases upholding front pay awards 'equal to the estimated present value of lost earnings that are reasonably likely to occur between the date of the judgment and the time when the employee can assume his new position.'" *Id.* (quoting *Pollard v. E.I. du Pont de Nours & Co.*, 532 U.S. 843, 850 (2001)).

24.    Conservatively estimating that Plaintiff would only have remained employed

through a period one-year post trial, the front pay calculation adds an additional **$78,748.80** ($1,514.40 x 52 weeks) to the amount in controversy.

25.    Plaintiff's back and/or front pay awards alone satisfy the amount in controversy requirement.

**ii.    Plaintiff Also Seeks Emotional Distress Damages, Awards of Which Are Often Significant in Employment Cases**

26.    Plaintiff also seeks emotional distress damages, further augmenting the foregoing amounts and demonstrating that the jurisdictional prerequisite for removal of this action is met. *See Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (plaintiff's claims for pain and suffering and humiliation properly may be factored into the jurisdictional analysis for purposes of removal).

27.    Plaintiff claims to have suffered "emotional distress, humiliation, mental anguish and embarrassment." *See* Blakey Decl., Ex. A, ¶¶ 21, 28, 37, 45, 54. If Plaintiff were to prevail in this action, it is reasonably likely that that she would receive a non-nominal sum for these claims. Emotional distress damages may be considered in calculating the amount in controversy even if not clearly pleaded in the complaint. *See Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002); *see also Richmond v. Allstate Ins. Co.*, 897 F.Supp.447, 449-450 (S.D. Cal. 1995).

28.    In *Kroske v. U.S. Bank Corp.*, 432 F.3d 976 (9th Cir. 2005), *cert denied*, 127 S. Ct. 157 (2006), the plaintiff identified in interrogatory responses emotional distress as a category of damages she sought but did not furnish the amount of such damages. The Ninth Circuit held that the district court properly considered the interrogatory responses along with emotional distress damages awarded in similar cases in determining the amount in controversy. In upholding the lower court's finding that the amount in controversy had been established, the Ninth Circuit reasoned that the plaintiff's "emotional distress damages would add at least an additional $25,000 to his claim," thus satisfying the amount in controversy requirement "even without including a potential award of attorney's fees." *Id.* at 980. Although CTSC disputes that Plaintiff is entitled to any such award, based on

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

*Kroske*, Plaintiff's allegations place in controversy at least **$25,000** in emotional distress damages alone.

### iii.   Plaintiff Also Seeks Punitive Damages, Which If Awarded, Would Likely Exceed the Amount In Controversy

29.   Plaintiff also seeks punitive damages from CTSC. Blakey Decl., Ex. A, Prayer. Courts may consider punitive damages when determining whether the Complaint meets the amount in controversy requirement. *Faulkner v. Astro-Med, Inc.*, 1999 WL 820198, *5 (N.D. Cal. Oct. 4, 1999) (punitive damages should be considered when determining the amount in controversy); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (same).

30.   The potential punitive damage award alone against CTSC may satisfy the amount in controversy. California law does not provide any specific monetary limit on the amount of punitive damages that may be awarded under Civil Code section 3294, and the proper amount of punitive damages under California law is based on the reprehensibility of defendant's misdeeds, the ratio between compensatory and punitive damages and ratio between damages and defendant's net worth. *Boyle v. Lorimar Productions, Inc.,* 13 F.3d 1357 (9th Cir. 1994).

31.   Numerous court decisions and jury verdicts in state and federal courts located within the Ninth Circuit demonstrate that compensatory and punitive damages well in excess of $75,000 have been awarded to individual plaintiffs where, as here, Plaintiff has alleged claims for discrimination. For example, in *Martin v. Arrow Electronics*, 2006 WL 8440729, *1 (C.D. Cal. Sept. 5, 2006), the plaintiff was awarded in excess of one million dollars for allegations of, among others, discrimination.

32.   In *Aucina v. Amoco Oil Co.,* the defendant-employer established that the amount in controversy exceeded the jurisdictional minimum where the former employee asserted claims for lost wages, lost benefits, mental anguish, and punitive damages. *Aucina,* 871 F.Supp. 332, 333 (S.D. Iowa 1994). The court noted that "[b]ecause the purpose of punitive damages is to capture a defendant's attention and deter others from similar

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

conduct" the plaintiff's claim for punitive damages "might alone" exceed the jurisdictional minimum. *Id.*, 871 F.Supp. at 334. Although CTSC vigorously denies Plaintiff's allegations, if Plaintiff were to prevail and establish the requisite state of mind, the punitive damages alone could easily exceed the jurisdictional minimum.

**iv.   Plaintiff Also Seeks Attorneys' Fees, Which Could Exceed the Value of Her Other Claims**

33.   In addition, in determining whether the amount in controversy exceeds $75,000, the Court is permitted to estimate the amount of reasonable attorneys' fees that Plaintiff will incur through trial if she were to prevail on her claims. *See Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002). The Ninth Circuit has held that "the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018). This amount includes attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (prayer for attorneys' fees included in determining the amount in controversy where potentially recoverable by statute).

34.   In considering the amount in controversy, the Court may consider the amount of attorneys' fees that will accrue until the entire matter is resolved. *See, e.g., Simmons*, 209 F.Supp.2d at 1035 (noting that attorneys' fees in individual employment cases often exceed damages). Cases involving the types of claims that Plaintiff has alleged in her Complaint require at least $75,000 in attorneys' fees to proceed through discovery and to trial during an approximate one-year period. *Galt G/S*, 142 F.3d at 1156f ("When an underlying statute authorizes an award of attorneys' fees, . . . such fees may be included in the amount in controversy.").

35.   Here, Plaintiff seeks attorneys' fees under the FEHA, which contains a prevailing party attorneys' fees provision. As courts have stressed, litigating employment cases "will undoubtedly require substantial effort from counsel" and "attorneys' fees in individual discrimination cases often exceed the damages." *Simmons*, 209 F.Supp.2d at 1035. Reasonable attorneys' fees for a successful employment case through trial could not

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

possibly be less than $75,000. *See id.* (attorneys' fees "necessarily accrue until the action is resolved").

36.     Furthermore, even at an assumed rate of $300 per hour, Plaintiff's counsel would need to spend only 250 hours of attorney time to incur $75,000 in reasonable attorney's fees (250 x $300 = $75,000). In fact, litigating a single-plaintiff lawsuit alleging claims of discrimination and failure to accommodate through trial realistically requires substantially more than 250 hours of attorney time.

37.     Accordingly, the claims of Plaintiff present a controversy greater than $75,000 because she seeks lost wages and benefits, damages for emotional distress that Plaintiff alleges she has suffered and will continue to suffer, punitive damages, and reasonable attorneys' fees and costs that will exceed at least $75,000, in the event Plaintiff prevails.

38.     Thus, based on the nature of Plaintiff's allegations, the extent and number of claims asserted, and the relief sought by Plaintiff in the Complaint—including past and future lost employment wages and benefits, emotional distress damages, punitive damages, and attorneys' fees—it is apparent that the amount in controversy well exceeds $75,000. *See, e.g.*, *White v. FCI USA, Inc.*, 319 F.3d 672, 674-76 (5th Cir. 2003) (affirmed district court determination that it was facially apparent that the jurisdictional amount was satisfied based on a request for compensatory damages, punitive damages, and attorneys' fees).

39.     As such, the requirements of 28 U.S.C. § 1332(a) have been met in that the amount in controversy exceeds $75,000, exclusive of interests and costs, and because this is a civil action between citizens of different states. Therefore, the United States District Court for the Central District of California has original jurisdiction over this matter and removal is authorized under 28 U.S.C. § 1441(b).

## VI.                    NOTICE OF REMOVAL

40.     Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record. In addition, a copy of this

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of Los Angeles.

## VII.    CONCLUSION

Therefore, CTSC removes the above action now pending against it in the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

Dated:  August 18, 2025

LITTLER MENDELSON, P.C.

Keith A. Jacoby
Jonathan Russell Blakey

Attorneys for Defendant
CITIZENS TELECOM SERVICES
COMPANY L.L.C.

LITTLER MENDELSON, P. C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

11